UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:13-cv-434-GFVT

KENNETH JARMAN,                                                              PLAINTIFF,

V.                      **MAGISTRATE JUDGE'S REPORT**
                        **AND RECOMMENDATION**

SSA (CAROLYN W. COLVIN, Acting
Commissioner of Social Security),                                           DEFENDANT.

INTRODUCTION

The parties filed cross-motions for summary judgment. [Rs. 10-11]. Subsequently, District Court Judge Gregory F. VanTatenhove referred the matter to the undersigned for preparation of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [R. 13]. Initially, the Plaintiff, Kenneth Jarman, listed three arguments in support of his summary-judgment motion. The undersigned determined that Jarman did not adequately develop his argument that a reasonable person could not conclude that Jarman is not disabled. [R. 14 at 2]. Accordingly, the undersigned recommended that the Court deny that portion of Jarman's summary-judgment motion advancing the "reasonable-person" argument. [R. 14 at 2]. Additionally, after finding that Jarman's other deficiently briefed arguments involved potentially colorable claims, the Court ordered him to rebrief his two remaining claims that: (1) the ALJ violated the treating-physician rule and (2) the ALJ did not consider the cumulative effect of Jarman's impairments. [R. 14 at 2-3]. Because the record following rebriefing reveals that the ALJ did not violate the treating-physician rule and did consider the cumulative effect of the

Jarman's impairments, the undersigned will recommend that the Commissioner's summary-judgment motion be granted and Jarman's motion be denied.

## BACKGROUND

Jarman alleges that he has been unable to work since January 10, 2007 due to degenerative disc disease and numbness in his legs. [Tr. at 219-221, 254]. Due to those medical issues, he filed for a period of disability and disability insurance benefits on October 23, 2008. [Tr. at 219]. The Social Security Administration denied his application [Tr. at 100-01] and his request for reconsideration [Tr. at 124-27]. Jarman then requested a hearing before an administrative law judge ("ALJ") [Tr. at 131-37], who also denied his claim [Tr. at 76-99, 102-11]. Thereafter, Jarman requested review of the ALJ's decision, and the Appeals Council remanded the case back to the ALJ. [Tr. at 116-20]. After another hearing, the ALJ issued a decision on August 7, 2012, denying his application for disability benefits. [Tr. at 9-20, 26-75]. Jarman again requested review of the ALJ's decision, but, this time, the ALJ denied review, and the ALJ's decision became the final decision of the Commissioner. [Tr. at 1-8]. Jarman filed his complaint in this Court on December 19, 2013. [R. 1].

The Court notes that, as required by the regulations, the ALJ considered Jarman's claim in accordance with the Social Security Administration's five-step sequential evaluation process. See C.F.R. § 404.1520; Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003); [Tr. at 9-20]. First, the ALJ found that Jarman had not engaged in substantial gainful activity since January 10, 2007. [Tr. at 14]. Second, the ALJ determined that he had the following severe impairments: "lumbar disc disease and bulging discs with peripheral neuropathy, and obesity." [Tr. at 15]. Third, the ALJ found that Jarman did not "have an impairment or combination of impairments" that met or medically equaled one of the Commissioner's listed impairments. [Tr.

at 15]. Fourth, the ALJ determined that Jarman's residual functional capacity allowed him to perform a reduced range of light work, although he could not return to any of his past relevant work. [Tr. at 16-18]. Fifth, and finally, the ALJ concluded that, given Jarman's age, education, work experience, and residual functional capacity, he could perform certain light-work jobs that existed in significant numbers in the national economy. [Tr. at 18-19].

## DISCUSSION

A reviewing court must uphold the findings of the ALJ if they are supported by substantial evidence. 42 U.S.C. § 405(g)(2006); see also Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981). The Sixth Circuit has held that "substantial evidence exists when a reasonable mind might accept the relevant evidence as adequate to support a conclusion." Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004) (internal citations and quotation marks omitted). The scope of judicial review is limited to the record itself, and the reviewing court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Hogg v. Sullivan, 987 F.2d 328, 331 (6th Cir. 1993).

The limited nature of substantial evidence review prevents the reviewing court from substituting its judgment for that of the ALJ. Rather, so long as substantial evidence exists, the reviewing court should affirm the ALJ's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion." Longworth v. Comm'r Soc. Sec. Admin., 402 F.3d 591, 595 (6th Cir. 2005) (internal citations and quotation marks omitted). Sixth Circuit precedent suggests that a finding of "no substantial evidence" would be appropriate in situations where the ALJ ignores uncontested, compelling evidence for one side, makes no express findings on witness credibility and makes a ruling based on facts with "little if any evidentiary value." Noe v. Weinberger, 512 F.2d 588 (6th Cir. 1975); see also Glass v. Sec'y of

3

Health, Educ. & Welfare, 517 F.2d 224 (6th Cir. 1975). Otherwise, if there is substantial evidence to support the ALJ's decision, "it must be affirmed even if the reviewing court would decide the matter differently." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994). With these standards in mind, the undersigned will now address Jarman's arguments.

### A. The Treating-Physician Rule

In his court-ordered supplemental brief [R. 15-1], Jarman argues that the ALJ erred in rejecting the opinion of Dr. Maria Castro, a treating physician, without adequately explaining why he afforded her opinion lesser weight. Jarman also claims that Castro's opinion should not have been given lesser weight because an MRI dated July 22, 2009, which showed a small disc herniation, supported the restrictions identified in Castro's opinion. Additionally, Jarman contends that the ALJ should not have discounted Castro's opinion because some of the conclusions of two consultative examiners, Drs. Helen O' Donnell and Jennifer Cook, supported Castro's opinion. Castro opined that Jarman could sit, stand, and walk for one hour each in an eight-hour workday and lift or carry up to ten pounds occasionally. [Tr. at 427].

A treating physician's opinion receives controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [consistent with] other substantial evidence." 20 C.F.R. § 404.1527(c)(2). An ALJ may assign less than controlling weight to a treating physician's opinion, but only upon satisfying two requirements. First, the ALJ must provide "good reasons" for why the opinion does not deserve controlling weight. Id.; see also Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). Second, he must explain what weight, if any, he assigns to the opinion. See 20 C.F.R. § 1527(c)(2). In performing this analysis, the ALJ should evaluate the length, frequency, nature, and extent of the treatment relationship; the evidence supporting the opinion; the consistency of the opinion with

the records as a whole; and the physician's specialization. Id. § 404.1527(c)(2)-(c)(6); see also Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011). While an ALJ must consider these factors, he need not provide "an exhaustive factor-by-factor analysis" in his decision. Francis v. Comm'r of Soc. Sec. Admin., 414 F. App'x 802, 804 (6th Cir. 2011).

In reviewing Castro's opinion, the ALJ found that Jarman's own statements, made directly to Castro, contradicted her findings. [Tr. at 17]. Although Jarman informed Castro that he could walk two miles a day when feeling well, Castro found that he could walk for no more than one mile. [Tr. at 17, 755]. Further, while Jarman described his physical activity as limited, he admitted to Castro that he was capable of increasing his activity. [Tr. at 17]. Indeed, he volunteered to do so as a means of improving his health that was more preferable to him than smoking cessation. [Tr. at 17]. Moreover, Jarman informed Castro that he was not currently taking medication and that he regularly walked his dog. [Tr. at 17]. For these reasons, the ALJ determined that the record did not support the restrictions contained in Castro's opinion. Thus, the ALJ provided a "good reason" for not affording controlling weight to the opinion of Castro. See Wilson, 378 F.3d at 544 (explaining that the obligation to provide "good reasons" is met when the ALJ supports, with evidence, his finding that the medical opinion is inconsistent with the case record).

Having found a "good reason" not to afford controlling weight to the opinion of Castro, the ALJ was then required to explain his decision to afford lesser weight to her opinion using the factors outlined in 20 C.F.R. § 404.1527(d)(2) (i.e., length and extent of treatment relationship, supportability, consistency with the record, and the treating source's specialization). Id. at 544-46. In his supplemental brief, Jarman asserts that the ALJ failed in this regard by not addressing the length and extent of the treatment relationship and the supportability and consistency of

5

Castro's opinion with the record as a whole. [R. 15-1 at 2]. This argument does not withstand scrutiny.

To begin with, the ALJ is not required to analyze every 20 C.F.R. § 404.1527(d)(2) factor in his decision. <u>Francis</u>, 414 F. App'x at 804. Therefore, it was not error for the ALJ to omit a discussion of the length and extent of Jarman's treatment relationship with Castro. Further, the ALJ did, in fact, address the lack of supportability and consistency of Castro's opinion with the record as a whole. As noted above, Castro's opinion was not consistent with the statements made to her by Jarman regarding his level of activity. Even more, the ALJ expounded that other objective medical evidence did not support the level of restriction found in Castro's opinion. [Tr. at 18] (noting that O'Donnell's report found Jarman to have a "well-muscled spine, as well as negative straight leg raising test in the seated position").

Nonetheless, in an attempt to argue that Castro's opinion was, in fact, supported by objective medical evidence, Jarman cites a July 22, 2009 MRI showing a small disc herniation. [Tr. at 526]. However, subsequent to the MRI, Jarman underwent back surgery on July 30, 2009. [Tr. at 673]. Thereafter, Castro's December, 2009 progress notes, completed a few months before she offered the March, 2010 functional opinion at issue here, showed no significant clinical abnormalities. [Tr. at 649]. Further, Castro reported that Jarman had "5/5 strength, normal reflexes and only decreased sensation over the lower back." [Tr. at 715]. Thus, the medical evidence cited by Jarman fails to provide substantial support for Castro's opinion. In sum, the ALJ accurately discussed the inconsistency of Castro's opinion compared to the record as a whole. Therefore, the ALJ adequately explained his decision to afford lesser weight to Castro's opinion using the 20 C.F.R. § 404.1527(d)(2) factors of inconsistency and lack of supportability.

Having found that Castro's opinion was properly discounted by the ALJ, the undersigned now turns to Jarman's argument that Castro's opinion should have been afforded controlling weight because it found some support in the opinions of two consultative examiners, Drs. O'Donnell and Cook.  In December, 2008, O'Donnell examined Jarman and opined that he could sit with frequent changes of position and appropriate breaks, carry light loads, and walk short distances and stand short periods of time. [Tr. at 370].  However, although it is not mentioned in Jarman's brief, O'Donnell further noted that he had a symmetrical and well-muscled spine and could do daily activities such as taking care of the home, cooking, and shopping. [Tr. at 18, 369-70].  Moreover, O'Donnell found that Jarman's subjective reports of his sensations were not consistent with the objective evidence. [Tr. at 18].  This being the case, Jarman is incorrect in asserting that O'Donnell's opinion provides support for Castro's more severe opinion.

Turning to Cook's opinion, Jarman cites to a questionnaire completed by Cook in which she noted that he could not lift or carry weight and could only sit, stand, and walk for a total of seven hours a day. [Tr. at 736-37].  The ALJ discounted the limitations provided in the questionnaire because they were based on Jarman's subjective complaints. [Tr. at 17]; see Bogle v. Sullivan, 998 F.2d 342, 347-48 (6th Cir. 1993) (explaining that medical opinions are not entitled to controlling weight when they are based on subjective complaints rather than objective, clinical evidence); Miller v. Comm'r of Soc. Sec., No. 12-12639, 2013 WL 4482969, at *10 (E.D. Mich. Aug. 20, 2013).  Instead, the ALJ adopted the separate, narrative portion of Cook's opinion that relied on her examination and objective findings and ultimately determined that Jarman could sit, walk, and stand for a full workday and had no limitations lifting or carrying objects. [Tr. at 733].  Thus, the portion of Cook's opinion relied upon by the ALJ did not actually provide support for Castro's opinion.

At any rate, neither O'Donnell nor Cook were treating physicians; therefore, neither of their opinions are presumed to be entitled to controlling weight. Furthermore, as noted above, those portions of their opinions that tended to support Castro's opinion were based on Jarman's subjective statements. As such, those particular opinions are not entitled to any weight, and they cannot provide any support for Castro's opinion, which is similarly reliant on unsupported subjective complaints. Thus, the undersigned finds no error in the ALJ's evaluation of the treating physician's opinion.

### B. Combination of Impairments

Jarman also argues that the ALJ erred by failing to properly consider the combined effects of his mental impairments. [R. 15-1 at 3]. Specifically, he contends that the consultative examiners and the ALJ failed to consider the effect of his obesity. Further, he claims that the ALJ erred by not presenting his obesity to the vocational expert.

To begin with, Jarman's argument that the consultative examiners failed to consider the effect of his obesity is not supported by the record. Dr. O'Donnell's examination report states that Jarman "is a moderately obese gentleman at 272 pounds on a 74-inch frame." [Tr. at 369]. Further, in her examination report, Dr. Cook notes Jarman's height and weight, specifically stating that he is "well-nourished." [Tr. at 732].

Moving on to Jarman's claims regarding the ALJ's analysis, Jarman correctly notes that the regulations expressly require the ALJ to consider the combined effects of any impairments suffered by a claimant. 20 C.F.R. § 404.1523; Walker v. Sec'y of Health & Human Servs., 901 F.2d 1306, 1310 (6th Cir. 2007). However, the undersigned finds that, contrary to Jarman's contentions, the ALJ fulfilled this requirement by addressing Jarman's obesity in his opinion.

In fact, the ALJ expressly found that Jarman's obesity constituted a severe impairment. [Tr. at 15]. Moreover, although the ALJ analyzed Jarman's alleged impairments separately, he noted that he found that no "combination of impairments" met the listings for disability. [Tr. at 15]; see also Loy v. Sec'y of Health & Human Servs., 901 F.2d 1306, 1310 (6th Cir. 1990) ("An ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination."). Further, in determining Jarman's residual functional capacity, the ALJ noted that he "considered all [of Jarman's] symptoms." [Tr. at 16].

Finally, the ALJ was not required to present Jarman's medical condition of obesity to the vocational expert. See Webb v. Comm'r of Soc. Sec., 368 F.3d 629, 633 (6th Cir. 2004) (explaining that the ALJ is not required to include a listing of all the claimant's medical conditions in questions to a vocational expert regarding a claimant's impairment). In sum, the ALJ complied with the regulations by considering the combined effects of all of Jarman's impairments, and his argument to the contrary is without merit.

## CONCLUSION

For the foregoing reasons, it is RECOMMENDED that those portions of Jarman's summary-judgment motion [R. 10] that assert his "treating-physician rule" and "combination of impairments" arguments should be DENIED. Further, the Defendant Commissioner's Motion for Summary Judgment [R. 11] should be GRANTED with regard to the "treating-physician rule" and "combination of impairments" arguments. Should the Court adopt this recommendation along with the undersigned's previous recommendation that the portion of Jarman's summary-judgment motion that advances a "reasonable person" argument should be denied [R. 14], the matter will stand fully adjudicated, and Judgment should be entered affirming the decision of the Commissioner.

As a final point of importance to the parties, specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting, Inc., 236 F. Supp. 2d 737, 749-50 (E.D. Ky. 2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. See Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

Signed February 24, 2015.

Signed By:
Edward B. Atkins    EBA
United States Magistrate Judge